

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,          )
                                 )
       Respondent,          )
                                 )
v.                               )          No. SC99913
                                 )
JARRAD RYAN VANDERGRIFT,   )
                                 )
       Appellant.           )

*Opinion issued June 13, 2023*

## APPEAL FROM THE CIRCUIT COURT OF CALLAWAY COUNTY
The Honorable Jeff Harris, Judge

This case was transferred to this Court by the court of appeals pursuant to rule 83.02.[1] Jarrad Ryan Vandergrift appeals following his conviction of three counts of child molestation in the first degree and three counts of statutory sodomy in the first degree. This case presents an unusual procedural background requiring *sua sponte* determinations of whether Vandergrift's appeal was timely, whether a written judgment of conviction in the proper form has been entered of record, and whether the resolution of either issue impacts appellate jurisdiction. This Court concludes that Vandergrift's right of appeal pursuant to § 547.070 was triggered upon the rendition of final judgment; that final judgment was

---

[1] Portions of this opinion are taken from the court of appeals opinion authored by Judge Cynthia L. Martin without further attribution.

rendered when the circuit court orally pronounced and imposed sentence in his presence; that Vandergrift's appeal was timely filed within 10 days of this date, invoking appellate jurisdiction; that a written judgment of conviction satisfying the requirements of Rule 29.07(c)[2] was entered of record, though not until nearly eight months after the rendition of final judgment; and that the tardy preparation and entry in the record of Vandergrift's Rule 29.07(c) judgment of conviction does not divest appellate jurisdiction. Further, Vandergrift's contentions that the circuit court abused its discretion when it overruled his amended motion for new trial and committed plain error when it *sua sponte* failed to exclude expert witness testimony are without merit.

## I.

### Procedural History Relevant to Determining Appellate Jurisdiction

The State charged Vandergrift with three counts of child molestation in the first degree in violation of § 566.067 and three counts of statutory sodomy in the first degree in violation of § 566.062.[3] Following a three-day jury trial, the jury entered verdicts finding Vandergrift guilty on all counts on February 3, 2021.

As required by Rule 29.07(b)(1)-(2), Vandergrift appeared on April 7, 2021, for a hearing on his post-trial motions and the rendition of judgment and sentencing. The circuit court overruled the post-trial motions. Following allocution, the circuit court rendered

---

[2] Rule 29.07 was amended, effective July 1, 2022. The amendments to the rule have no impact on the substantive analysis in this opinion. All other rule references are to Missouri Court Rules (2021) unless otherwise noted.
[3] All references to §§ 566.067 and 566.062 are to RSMo 2000. All other statutory references are to RSMo 2016.

2

judgment on each count consistent with the jury's verdicts and imposed sentences of 15 years for each count of child molestation and 30 years for each count of statutory sodomy, with each sentence running consecutively, resulting in sentences totaling 135 years. Vandergrift was then advised of his appellate rights as required by Rule 29.07(b)(3).

Vandergrift filed a notice of appeal in the Callaway County circuit court on April 14, 2021. Vandergrift used Form No. 8-A(3), the form this Court promulgated for use in filing a notice of appeal in a criminal case. In the field requiring insertion of the date of the judgment, Vandergrift stated "April 7th, 2021." To respond to the form's direction to attach a copy of the judgment appealed from, Vandergrift attached two April 7, 2021, docket entries reflected on Case.net.[4] The docket entries reflect the circuit court overruled Vandergrift's post-trial motions and imposed sentences on each count for which Vandergrift was convicted. The docket entries do not identify the crimes for which Vandergrift was convicted.

The Callaway County circuit clerk forwarded Vandergrift's Form No. 8-A(3) notice of appeal to the court of appeals for the western district on April 15, 2021. The document forwarded from the circuit clerk did not attach the April 7, 2021, docket entries and, instead, attached a "form" designated as "Judgment" that had been completed by the clerk's office to reflect, among other things, the specific crimes of which Vandergrift has been convicted and the substance of the sentences orally imposed by the circuit court on April

---

[4] "Case.net is an electronic display of court information provided for the convenience of litigants and the public." *McGuire v. Edwards*, 571 S.W.3d 661, 670 (Mo. App. 2019). "Because Case.net is not an official record, this Court recognizes its limitations." *Johnson v. McCullough*, 306 S.W.3d 551, 559 n.4 (Mo. banc 2010).

7, 2021 ("April 2021 judgment form").  At the bottom of the last page, the April 2021 judgment form recites: "**So Ordered on: 19CW-CR00770-01 ST V JARRAD RYAN VANDERGRIFT**."  The form's fields permitting insertion of the date of the judgment and the trial judge's signature were completed with typewritten entries of "4/15/2021" (one day after Vandergrift filed his notice of appeal) and "Judge Harris."  The form's fields permitting insertion of the date and a signature for certification by the clerk "that the above is a true copy of the original Judgment and Sentence of the court in the above cause, as it appears on the record in my office" were completed by typewritten entries of "4/15/2021" and "/s/ Kanesha Boone."

On December 2, 2021, Vandergrift filed a system-generated legal file in the court of appeals as required by Rules 30.04(b) and 81.12(b)(1).  The system-generated legal file includes a docket sheet from the underlying proceedings.  The docket sheet reflects an entry for the notice of appeal Vandergrift filed in the circuit court on April 14, 2021, with the April 7, 2021, docket entries attached.  The docket sheet does not include an entry for the April 2021 judgment from the circuit clerk submitted to the court of appeals with Vandergrift's notice of appeal.  The April 2021 judgment form is not included in the system-generated legal file because it was never entered of record in the circuit court.

The docket sheet in the system-generated legal file does reflect, however, an entry dated December 2, 2021, designated as "Sentence and Judgment."  The document associated with this entry is also a "form" designated as "Judgment" ("December 2021 judgment form") and is included in the system-generated legal file.  The December 2021 judgment form is substantively identical to the April 2021 judgment form except the fields

4

at the bottom of the form for the date of the judgment and for the trial judge's signature are blank, and the fields for the circuit clerk's certification that the form is "a true copy of the original Judgment and Sentence of the court" are dated "12/2/21" and reflect the typewritten name of "/s/ Michelle Smith."

## II.

### Appellate Jurisdiction

This Court has an obligation to determine, acting *sua sponte* when necessary, whether it has jurisdiction to entertain an appeal. *State v. Johnson*, 617 S.W.3d 439, 443 (Mo. banc 2021). The steps taken by the circuit clerk to enter Vandergrift's judgment of conviction in the record require this Court to address whether a written judgment of conviction is required to be entered in the record to invoke appellate jurisdiction; whether a criminal defendant's right to appeal is triggered by the entry of a written judgment of conviction or instead by the rendition of judgment and imposition of sentence in the defendant's presence; and whether a proper judgment was ever entered in the record in this case.

### A.

**The right of appeal in criminal cases commences on the rendition of final judgment**

The right to appeal is purely statutory. *State v. Waters*, 597 S.W.3d 185, 186 (Mo. banc 2020). Section 547.070 sets forth the right to appeal final judgments in criminal cases:

> In all cases of ***final judgment rendered*** upon any indictment or information, an appeal to the proper appellate court shall be allowed to the defendant, provided, defendant or his attorney of record shall during the term at which the judgment is rendered file his written application for such appeal.

(Emphasis added).  This statutory right of appeal is reiterated in Rule 30.01(a), which provides: "***After the rendition of final judgment*** in a criminal case, every party[5] shall be entitled to any appeal permitted by law.  Appeals may be taken as provided in Rule 81.04 and Rule 81.08."  (Emphasis added).  Pursuant to Rule 81.04(a), the appeal permitted by Rule 30.01(a) must be filed within 10 days of rendition of final judgment.

Section 547.070 does not define "final judgment rendered."  Certainty as to when a defendant's statutory right to appeal is triggered is essential,[6] however, and this Court, therefore, must construe the statute to determine what the legislature intended by the use of this phrase in the context of the remainder of that statute and the other statutes bearing on the same subject.

This Court has held that a "judgment in a criminal case is final 'if the judgment disposes of all disputed issues in the case and leaves nothing for future adjudication.'"

---

[5] Rule 30.01(a) addresses not only the defendant's right to appeal in a criminal case but also the State's right to appeal.  The statutory authority for the State to file an appeal in a criminal case is addressed in § 547.200, which addresses both interlocutory appeals and the limited right of appeal from final dispositions in criminal cases.  Rule 30.02 also addresses the State's right to file interlocutory appeals in criminal cases.  This opinion addresses only the right of appeal from the rendition of a final judgment in a criminal case that results in the conviction of a criminal defendant.  Appeals taken by the State, whether from interlocutory orders or from final judgments, are beyond the scope of this opinion.

[6] An authorized appeal in a criminal matter must be filed within 10 days after the "rendition of final judgment."  Rule 30.01(a); Rule 81.04(a); Rule 30.03.  This Court's rules of criminal procedure do not authorize prematurely filed appeals, requiring the dismissal of any appeal filed before the "rendition of a final judgment."  And if a timely notice of appeal is not filed with the clerk of the circuit court, a party may seek leave to late file an appeal, but must do so within 12 months after the judgment becomes final, a timeframe that cannot be extended.  *Gehrke v. State*, 280 S.W.3d 54, 58 (Mo. banc 2009).  The combined effect of these Rules can impose great hardship if an appeal is dismissed because it is premature or not timely filed, should dismissal occur after the time to seek leave to late file an appeal has expired.

6

*Waters*, 597 S.W.3d at 187. "Most often, the question of finality in a criminal case is determined by whether a sentence has been imposed."[7] *Id*. But § 547.070 very specifically provides that the defendant's right to appeal is triggered when a final judgment is "rendered."

A final judgment is *rendered* when the circuit court orally announces the judgment and imposes sentence in the presence of the defendant. *State v. Vinson*, 87 S.W.2d 637, 639-40 (Mo. 1935); *see also* 1 A.C. Freeman, *A Treatise on the Law of Judgments* § 48, at 80-81 (Edward W. Tuttle ed. 1925) (noting "rendition of judgment is the pronouncement by the court of its conclusions and decision upon the matter submitted to it for adjudication" and clarifying "[a] judgment may be 'rendered' when the decision is officially announced either orally in open court or by memorandum filed with the clerk"); *Rendition of Judgment*, *Black's Law Dictionary* (11th ed. 2019) (defining "rendition of judgment" as "[t]he judge's oral or written ruling containing the judgment entered").

Once the final judgment has been "rendered," i.e., pronounced orally in the presence of the defendant, a judgment reflecting and memorializing the orally pronounced sentence must be entered in the record. Rule 29.07(c) provides: "A judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence." Unlike judgments in civil cases, no rule or statute requires a judgment of conviction be signed by judge. Instead, the entry of a judgment of conviction in the record, though required, is a

---

[7] Not all final judgments in criminal cases end in conviction. The notion that finality occurs upon the imposition of sentence plainly applies only when a criminal defendant has been convicted. This opinion addresses only a criminal defendant's right of appeal following conviction.

mere ministerial act, consistent with the fact that the terms of the Rule 29.07(c) judgment of conviction must conform with the oral judgment rendered by the circuit court. *See also* § 546.590 (providing the clerk "shall enter such judgment fully on the minutes"); *see Entry of Judgment*, *Black's Law Dictionary* (11th ed. 2019) (defining "entry of judgment" as "[t]he ministerial recording of a court's final decision, usu[ally] by noting it in a judgment book or civil docket"); *Webster's Third New International Dictionary of the English Language* 1223 (3d ed. 2002) (defining "judgment book" as "a book in which the clerk of a court of record *enters* judgments" (emphasis added)); 1 A.C. Freeman, *A Treatise on the Law of Judgments* § 49, at 83 (Edward W. Tuttle ed. 1925) (noting entry occurs where a court "reduce[s] [its] decisions to writing in some book or record kept for that purpose").

Accordingly, § 547.070 provides that a defendant's statutory right to appeal is triggered by the act of "rendering" or oral pronouncement of the final judgment, not the ministerial act of entering a written judgment. Nevertheless, the entry of a written judgment of conviction must be included in the record on appeal, and appellate review cannot proceed unless and until that judgment is entered in the record. Rule 30.04(b) ("The legal file shall be prepared as provided in Rule 81.12, except that the legal file shall always include . . . the judgment and sentence[.]"). Its absence, however, does not deprive a court of appellate jurisdiction, but could support dismissal of an appeal on procedural grounds pursuant to Rule 30.14.

In *Vinson*, this Court explained why both rendition and entry of judgment are necessary:

In practice sentence is pronounced orally, and when this has been done in defendant's presence, he has been accorded the full measure of his right, and the court may thereafter write out the sentence in his absence. Judge Freeman, in his authoritative work on Judgments, makes this observation concerning the importance and necessity of the judgment entry: "Hence all courts and all tribunals possessing judicial functions are required by the written or unwritten law, and often by both, to reduce their decisions to writing in some book or record kept for that purpose. The requirement is believed to be of universal application. The record, if not made up, or if lost or destroyed, should be perfected or replaced by appropriate proceedings in the court where the judgment was pronounced. *While in one sense a judgment is 'rendered' when it is announced by a judge, yet until that judgment is entered of record there is no competent evidence of such rendition. It cannot exist or be dependent upon the memory of the officers of the court or any memorandum not embraced in the record which the law provides shall be made*."

The few cases dealing with the question of the effect of a mere oral announcement of a sentence *establish the rule that the oral statement of the judge, without an entry thereof in the records, does not constitute a conclusive judgment*. . . . In *State ex rel. v. Goodrich, J.*, 159 Mo.App. 422, 140 S.W. 629, 630, it was said: "*After the expiration of the term at which a judgment is rendered, the court can speak only by its records, and, though a judgment actually was pronounced, if the act is not made the subject of any entry, either by the judge or clerk, the judgment loses its vitality from the complete lack of authentic means of support. To hold otherwise would be to say that a judgment might rest alone in the memory of the judge, and to ignore the rule that a court can speak by its records alone*."

. . . [I]t [is] the duty of the appellant in cases of this character to file "a full transcript of the record in the cause including the bill of exceptions, judgment and sentence." . . . We have held appellant remiss in his duty with respect to bringing up the bill of exceptions, and, accordingly, for his fault, we have declined to review the alleged errors upon the trial. And the rule is, if an appellant has failed to bring up enough of the record to enable us to pass on his case, his appeal should be dismissed. *State v. Kaiser*, 318 Mo. 523, 300 S.W. 716; *State v. Craft*, 334 Mo. 311, 66 S.W. (2d) 521; *State v. Fish* (Mo.Sup.) 217 S.W. 19. But should this penalty be visited upon an appellant where, as here, he has performed his duty in so far as he may, and when, for no default or omission on his part, he is unable to bring up such a record as the statute contemplates? The statute, section 3715, R.S.Mo. 1929, section 3715, Mo.St.Ann. p. 3265, provides it is the duty of the clerk, whenever a

9

judgment upon a conviction shall be rendered, to "enter such judgment fully on the minutes, stating briefly the offense for which such conviction shall have been had, and the court shall inspect such entries and conform them to the facts." And it is further provided: "But the omission of this duty, either by the clerk or judge, shall in nowise affect or impair the validity of the judgment." . . .

*De[e]ming it essential that, for the purpose of appellate review, the judgment entry upon conviction be preserved and shown by the transcript of the record*, the submission is set aside and the case remanded, with directions to enter judgment in accordance with the verdict.

87 S.W.2d at 639-40 (alterations and citations omitted) (emphasis added) (cleaned up).[8]

*Vinson* essentially states that, because a court can speak only through its records, and entry is the official record of the judgment that was orally rendered, entry is an essential prerequisite for an appellate court to review the record on an appeal from a judgment of conviction. Without entry, an appellate court is left to speculate whether judgment actually was rendered and, if so, its terms and conditions. Accordingly, when rendition of judgment has occurred but entry has not, the appellate court must remand for entry of the judgment before appellate review can proceed. *See, e.g.*, *id.* at 640; *State v. White*, 99 S.W.2d 72, 75 (Mo. 1936); *State v. Skaggs*, 248 S.W.2d 635, 638 (Mo. 1952).

Here, unlike in *Vinson* and the cases cited in and relying on *Vinson*, judgment was entered on the record. Additionally, the judgment entered on the record December 2, 2021, complied with the requirements of Rule 29.07(c). Accordingly, Vandergrift timely asserted his statutory right to appeal by filing a notice of appeal within 10 days of the date

---

[8] Section 3715, RSMo 1929, is the predecessor of § 546.590. The language of § 546.590 is *identical* to § 3715.

on which the circuit court orally pronounced judgment in his presence. This Court has jurisdiction of that appeal under article 5, section 10 of the Missouri Constitution. Moreover, there is no impediment to appellate review because that judgment was entered by the clerk in a form complying Rule 29.07(c).

## III.

### Factual History Relevant to Vandergrift's Points on Appeal

Vandergrift does not challenge the sufficiency of the evidence to support his convictions of three counts of first-degree child molestation and three counts of first-degree statutory sodomy. Viewed in the light most favorable to the jury's verdicts,[9] the evidence established the following:

A.V. ("Victim"), born in March 2005, grew up in a home in New Bloomfield, Missouri, with her mother ("Mother"), Vandergrift, and her three siblings. Victim believed Vandergrift was her biological father but later discovered he was her stepfather and her siblings were her half-siblings.[10] Victim testified at trial that, from the age of four or five until she turned 14 years old in March 2019, Vandergrift "molested [her]." Victim described particular instances of Vandergrift placing his fingers in her vagina, touching her breasts, and placing his penis in her mouth.

In addition to Victim's recitation of the sexual abuse she endured by Vandergrift, Mother testified that, when Victim was approximately four years old, Victim "play[ed]

---

[9] "This Court reviews the evidence in the light most favorable to the jury's verdict." *State v. Celis-Garcia*, 344 S.W.3d 150, 152 (Mo. banc 2011).

[10] For the sake of ease, this opinion refers to Victim's siblings without the "half" modifier.

11

with her vagina" while in a restroom. Mother instructed Victim to stop and said, "We don't touch our girl parts." Victim then told Mother, "Daddy does it." Mother did not report this incident to law enforcement or to the Children's Division as suspected abuse. Other than this statement to Mother, Victim never told anyone about the sexual abuse until March 2019 because she was afraid Vandergrift would hurt her.

In March 2019, Victim's younger sister was approximately the same age as Victim when Vandergrift began sexually abusing Victim, and Victim became worried Vandergrift would similarly abuse her sister. After her fourteenth birthday, Victim told her then-best friend, then-boyfriend, and two other friends about Vandergrift's sexual abuse. Her friends and boyfriend told Victim she needed to tell an adult what was happening to her. Victim decided to tell her former school guidance counselor, Siobhanna Mayotte, about the abuse.

Right before her school's spring break in March 2019, Victim placed a handwritten note in a locked mailbox outside Mayotte's classroom. The note indicated Victim needed to speak with Mayotte "about something that's really important." When she received the note, Mayotte attempted to speak with Victim, but Victim brushed off Mayotte, saying she did not have time. Mayotte knew, however, that Victim was spending spring break with a friend, so Mayotte contacted the friend's mother and was able to speak on the telephone with the Victim. Victim told Mayotte she was safe and would speak with Mayotte when they returned to school after spring break.

On Monday, April 1, 2019, Victim went to Mayotte's office and, while sobbing, told Mayotte that Vandergrift had been sexually abusing her. Mayotte called the Children's Division abuse hotline. Mother, who worked at the school as a paraprofessional, came to

12

Mayotte's classroom. Victim attempted to tell Mother about the sexual abuse by Vandergrift, but she was unable to speak. At Victim's request, Mayotte relayed to Mother what Victim had said earlier that morning about the abuse.

Dr. Holly Monroe, a physician specializing in child abuse pediatrics, performed Victim's sexual assault forensic examination ("SAFE") on April 9, 2019. Dr. Monroe performed a second SAFE on Victim the next month with the assistance of a pediatric resident and a nurse. The examinations revealed Victim experienced a "complete transection of the hymen at 5 o'clock," an injury that could only exist as a result of penetration of Victim's vagina. Dr. Monroe opined Victim's injury was consistent with Victim's disclosure of sexual abuse.

On February 3, 2021, the jury returned its verdicts finding Vandergrift guilty on all six counts. At Vandergrift's request, the circuit court granted additional time for post-trial motions. Vandergrift filed a motion for new trial on February 15, 2021.[11] The motion for new trial asserted, in part, that the circuit court committed plain error in allowing Mayotte to testify it is common for child victims of sexual abuse, child molestation, and sexual touch to delay disclosing these acts. Then, on March 24, 2021, Vandergrift filed a first amended motion for new trial. The amended motion for new trial argued, in part, that there was newly discovered evidence that Victim had sexual intercourse with her boyfriend after she disclosed the sexual abuse but before Dr. Monroe performed the SAFEs, which provided an alternative explanation for the injury to Victim's hymen. On March 31, 2021,

---

[11] Vandergrift also filed a motion to renew his motion for judgment of acquittal.

13

Vandergrift filed a motion for plain error review pursuant to Rule 29.21(b). The motion for plain error review presented the same argument about newly discovered evidence raised in his amended motion for new trial.

The circuit court held a hearing on Vandergrift's post-trial motions. Victim's older brother testified Victim's former boyfriend indicated he had sexual intercourse with Victim after she told Mayotte about the abuse but before Dr. Monroe performed the SAFEs. But, in addition to that testimony from Victim's older brother, the circuit court also considered affidavits from Victim and her former boyfriend. Victim's affidavit indicated that, during a pretrial deposition on December 20, 2019, she told the truth when answering "no" to whether she had ever had sexual intercourse with her former boyfriend. Victim's former boyfriend's affidavit stated that he did not lie during a pretrial deposition on December 20, 2019, when he answered that he had never penetrated Victim's vagina. Victim's former boyfriend also indicated in his affidavit that he did not tell Victim's older brother that he had sexual intercourse after Victim disclosed the sexual abuse but before the SAFE was performed. Victim's former boyfriend said he told Victim's older brother that he had sexual intercourse with Victim, but that did not occur until after his December 20, 2019, deposition. The circuit court overruled Vandergrift's motions and proceeded to final disposition of the case.

## IV.

## Analysis of Points on Appeal

Vandergrift's first point relied on asserts the circuit court abused its discretion in overruling his amended motion for new trial because newly discovered evidence – that Victim and her former boyfriend had sexual intercourse after Victim's disclosure to Mayotte but before the SAFEs were performed – was so material that, if heard by the jury, it would have likely produced a different result. Vandergrift's second point relied on asserts the circuit court committed plain error in failing to *sua sponte* strike Mayotte's testimony about delayed reporting of sexual abuse because it was unqualified expert testimony under § 490.065.2.[12]

## A.

## Point One: Newly Discovered Evidence

Vandergrift's first point on appeal challenges the overruling of his amended motion for new trial. Before addressing the merits of this contention, this Court must first address whether the amended motion for new trial is authorized by the rules of criminal procedure.

Rule 29.11(b) provides, "[a] motion for new trial . . . shall be filed within fifteen days after the return of the verdict" unless the defendant requests, within the same time frame, an extension of time to file the motion. If a timely request for extension is made, the circuit court may grant an extension not to exceed 10 additional days. Rule 29.11(b).

---

[12] All references to § 490.065 are to RSMo Supp. 2017.

Thus, a motion for new trial can be permissibly filed no more than 25 days after the jury's return of its verdict. *State v. Terry*, 304 S.W.3d 105, 108 & n.6 (Mo. banc 2010).

The time limitations set forth in Rule 29.11(b) are mandatory. *State v. Tucker*, 451 S.W.2d 91, 92 (Mo. 1970). "Once the time for filing a motion for a new trial has passed, the Missouri rules have no provision for the granting of a new trial based on newly discovered evidence even if the evidence is available prior to sentencing." *Terry*, 304 S.W.3d at 109. Because there is no exception to the mandatory time period, an amended motion for new trial filed after the expiration of the time period is "a nullity and preserve[s] nothing for appellate review." *Tucker*, 451 S.W.2d at 92 (internal citation and quotation omitted).

Because the jury returned its verdict on February 3, 2021, the initial 15-day period for filing a motion for new trial would have ended February 18, 2021, had the circuit court not granted Vandergrift an extension for filing post-trial motions. Because an extension was timely requested and granted, the deadline for filing a motion for new trial was February 28, 2021. Vandergrift's motion for new trial was timely filed on February 15, 2021. But Vandergrift did not assert his claim of newly discovered evidence until he filed his amended motion for new trial on March 24, 2021. The amended motion was untimely and was a procedural nullity preserving nothing for this Court's review.

Perhaps recognizing this fact, Vandergrift's counsel also filed a motion for plain error review in the circuit court, raising the same argument about newly discovered evidence raised in the amended motion for new trial. Vandergrift's point on appeal, however, does not challenge the circuit court's overruling of the motion for plain error

16

review. It is questionable whether the claim of error for failing to grant a new trial based on newly discovered evidence is preserved for this Court's review.

Nonetheless, this Court elects to review this claim *ex gratia* to determine whether the claim rises to the level to require this Court "to prevent a miscarriage of justice or manifest injustice." *Terry*, 304 S.W.3d at 109. "[A]n appellate court has the inherent power to prevent a miscarriage of justice or manifest injustice by remanding a case to the trial court for consideration of newly discovered evidence presented for the first time on appeal." *Id.* "An appellate court will exercise this power in its discretion." *Id.*

The circuit court elected to review Vandergrift's untimely motion for new trial pursuant to Rule 29.12(b), which provides: "Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." When an appellate court reviews a circuit court's determination from a Rule 29.12(b) motion, the correct inquiry is to review the circuit court's findings to determine if it applied the standard set forth in Rule 29.12(b). *See State v. Letica*, 356 S.W.3d 157, 167 (Mo. banc 2011) ("Any issue that was not preserved at trial can only be reviewed for plain error, which requires a finding that manifest injustice or a miscarriage of justice has resulted from the trial court error.").

"Rule 29.11 provides that the court may grant a new trial 'upon good cause shown.'" *State v. Stewart*, 313 S.W.3d 661, 665 (Mo. banc 2010). "New trials based on newly discovered evidence are disfavored, and the trial court has substantial discretion in deciding whether a new trial should be granted." *Id.*

17

To establish a right to a new trial on the basis of newly discovered evidence, a defendant must establish:

1. The facts constituting the newly discovered evidence have come to the movant's knowledge after the end of the trial;
2. Movant's lack of prior knowledge is not owing to any want of due diligence on his part;
3. The evidence is so material that it is likely to produce a different result at a new trial; and
4. The evidence is neither cumulative only nor merely of an impeaching nature.

*Terry*, 304 S.W.3d at 109 (quoting *State v. Whitfield*, 939 S.W.2d 361, 367 (Mo. banc 1997), *mandate recalled on another basis in State v. Whitfield*, 107 S.W.3d 253 (Mo. banc 2003)).[13]  The circuit court, after hearing evidence regarding Vandergrift's request for a new trial on the basis of newly discovered evidence, overruled the claim.

In *Terry*, the victim of statutory rape testified the defendant was the only person she had sexual intercourse with during the relevant time period during which she became pregnant. *Id.* at 107.  Between the jury's verdict and sentencing, however, the victim gave birth, and DNA testing of the child revealed a zero-percent chance the defendant was the child's biological father. *Id.* at 108.  The defendant filed an untimely motion for new trial. *Id.*  This Court concluded the motion for new trial appeared to satisfy each of the four

---

[13] This case is in a markedly different procedural posture than *Terry*.  In *Terry*, the newly discovered evidence was presented for the first time in a motion to remand after the case was pending in the court of appeals.  304 S.W.3d at 108.  Therefore, in *Terry*, the newly discovered evidence was never presented to the circuit court, and the circuit court never had the opportunity to determine the credibility or materiality of any evidence or claims.  Conversely, in this case, Vandergrift presented the newly discovered evidence to the circuit court before the circuit court sentenced him.  Therefore, the circuit court was able to hold a hearing on the claims, and Vandergrift had the opportunity to present the newly discovered evidence in support of his claims prior to sentencing.  Vandergrift's appeal reaches this Court after the circuit court heard and developed a record on the newly discovered evidence.

requirements to obtain a new trial on the basis of newly discovered evidence and remanded the case for the circuit court to determine whether newly discovered evidence required a new trial to avoid manifest injustice or miscarriage of justice. *Id.* at 109. With respect to the third and the fourth elements, this Court held:

> The third element is satisfied because, as discussed below, the new evidence casts serious doubt on Terry's conviction and is material to proving the key element of the crime of statutory rape, that Terry and A.W. had sex because the victim was pregnant and testified that she had sex only with Terry. The fourth element also is satisfied. Although the DNA evidence would impeach A.W.'s testimony, it does not "merely" impeach – it conclusively shows that she perjured herself. Generally, the jury decides the effect of impeachment evidence in making its factual conclusions and, even with impeachment evidence, still may choose to believe the witness. But here, the jury has nothing to weigh because, if verified, the DNA test proves that A.W. committed perjury as to a material part of her testimony.

*Id.*

The newly discovered evidence in this case is not akin to the newly discovered evidence in *Terry*. The circuit court heard all arguments and evidence on Vandergrift's motions and overruled them for reasons "articulated by the State as well as the governing legal standards." The State's arguments included, but were not limited to, the credibility of Victim's older brother's testimony and the ambiguous text message compared with the credibility of the Victim and the Victim's former boyfriend.

This Court agrees with the circuit court and is not persuaded that the newly discovered evidence satisfies either the third or the fourth *Terry* requirements. The newly discovered evidence in this case does not constitute a circumstance that would have required the circuit court to order a new trial to avoid manifest injustice or a miscarriage of justice.

# B.

## Mayotte's Testimony about Delayed Disclosure

Vandergrift's second point on appeal contends Mayotte's testimony about delayed disclosure of acts of sexual abuse, child molestation, and sexual touching was unqualified expert testimony. While Vandergrift included this allegation of error in his motion for new trial, "[a]n objection must be specific and made contemporaneously with the purported error." *State v. Johnson*, 524 S.W.3d 505, 513 (Mo. banc 2017) (internal quotation omitted). But Vandergrift did not preserve this claim of error by making a timely and specific objection at trial. He requests plain error review, pursuant to Rule 30.20, arguing the circuit court plainly erred in failing to *sua sponte* strike Mayotte's testimony about delayed disclosure.

"Plain errors affecting substantial rights may be considered in the discretion of the court when the error has resulted in manifest injustice or miscarriage of justice." *Id.* (alteration omitted).

> First, the Court must determine whether the claimed error is, in fact, plain error affecting substantial rights. An error is plain if it is evident, obvious, and clear. Substantial rights are involved if, facially, there are significant grounds for believing that the error is of the type from which manifest injustice or miscarriage of justice could result if left uncorrected. Second, if plain error affecting substantial rights is found, the Court determines whether the error actually did result in manifest injustice or a miscarriage of justice. Manifest injustice is determined by the facts and circumstances of the case, and the defendant bears the burden of establishing manifest injustice. To be entitled to relief under the plain error rule, an appellant must go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights. In other words, the appellant must show that the error affected his rights so substantially that a miscarriage of justice or manifest injustice will occur if the error is left uncorrected.

*Id*. (internal quotations, citations, and alterations omitted).

During trial, the State asked Mayotte on redirect examination to explain what the term "delayed disclosure" means. Mayotte answered, "[t]hat a child withholds their [sic] disclosure of abuse or neglect for a significant period of time." The State then asked Mayotte whether, during her coursework for two master's programs or her training as a child abuse and neglect investigator for the Children's Division, she had received specific training in regard to delayed disclosure and signals of abuse. Mayotte testified she had. The State than asked, "when it comes to delayed disclosure, based on your experience and training, would you say that it is more common or more uncommon for a child to wait to tell – or for anyone, an adult, to tell someone about their abuse?" Mayotte testified it was more common "[b]y quite a bit." Vandergrift's counsel did not object and did not conduct re-cross examination of Mayotte. Nonetheless, Vandergrift asserted in his motion for new trial, and now asserts on appeal, that Mayotte's testimony was inadmissible expert witness testimony pursuant to § 490.065.2 because an inadequate foundation was laid to establish Mayotte's expertise on the subject of delayed disclosure.

Section 490.065 addresses the admission of expert testimony in Missouri courts. Subsection 2 applies to the prosecution of a defendant for first-degree child molestation and first-degree statutory sodomy. Section 490.065.2 provides, in relevant part:

> (1) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case;

. . . .

(4) Unless the court orders otherwise, an expert may state an opinion and give the reasons for it without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination.

In *State v. Minor*, 648 S.W.3d 721, 733 (Mo. banc 2022), this Court considered whether the circuit court abused its discretion in admitting expert testimony by a Child Protection Center ("CPC") forensic interviewer regarding delayed disclosure by child victims of sexual abuse. The defendant claimed the CPC forensic interviewer did not meet the criteria set forth in § 490.065 to be qualified as an expert and challenged the foundation for the opinion. *Id.* at 733-34. The Court rejected both arguments. First, it concluded the CPC forensic interviewer was qualified as an expert witness based on her education, experience, and training. *Id.* Second, the Court recognized that "[w]hen a witness provides non-scientific, generalized testimony, based upon expert specialized knowledge, a different reliability analysis is appropriate," so that, "'[a]s long as an expert's testimony rests upon good grounds, based on what is known[,] it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset.'" *Id.* at 734 (second alteration in original). The Court then recognized "[a]ppellate courts repeatedly have found evidence regarding delayed-disclosure evidence is relevant and admissible in child sexual abuse cases" so that the trial court did not abuse

its discretion in allowing the CPC forensic interviewer to provide "generalized testimony concerning children's disclosure of sexual abuse based upon her extensive experience and training." *Id.* at 735.

The circumstances surrounding Mayotte's testimony are nearly identical to those in *Minor*. Mayotte established she had training regarding delayed disclosure by child victims of sexual abuse through her coursework for the master's degree she has already been awarded and the master's degree in progress, through her training and experience as a child abuse and neglect investigator for the Children's Division for eight years, and through her seven years as a school counselor. Based on that education and experience, Mayotte gave "non-scientific, generalized testimony" about delayed disclosure by child victims of sexual abuse. If the circuit court did not abuse its discretion in allowing such evidence over timely objection in *Minor*, then the circuit court certainly did not commit plain error in failing to *sua sponte* exclude Mayotte's testimony here.

## Conclusion

For the reasons explained, this Court has appellate jurisdiction, and the circuit court's judgment is affirmed.

_____
Zel M. Fischer, Judge

All concur.

23